## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SHOFFNER,** *et al.* | |
| **Plaintiffs** | **CIVIL ACTION** |
| **v.** | **NO. 15-00392** |
| **MICHAEL WENEROWICZ,** *et al.* | |
| **Defendants** | |

**PAPPERT, J.**                                                                              **JULY 13, 2015**

### MEMORANDUM

Plaintiffs are former prisoners who were allegedly incarcerated beyond their maximum sentences in violation their constitutional rights.  They allege that they were in state prison and subsequently released on parole.  When their parole was later revoked, they were awarded "street time" credit that should have reduced the amount of time they were to remain incarcerated. Defendants, however, failed to properly communicate and implement these credits, even though Plaintiffs notified them of the problem through the prison grievance system.  Plaintiffs consequently remained in state prison beyond their maximum sentences before ultimately being released.

Plaintiffs seek damages and prospective injunctive relief on behalf of themselves and the members of a putative class.  Defendants move to dismiss those claims.  The Court grants the motion.  Plaintiffs lack standing – and the Court therefore lacks jurisdiction – to assert their claims for prospective injunctive relief.  They similarly lack standing to assert claims on behalf of the putative class members.  Additionally, the factual allegations in the complaint fail to state a plausible claim for damages on behalf of the Plaintiffs individually.  Plaintiffs' claims are dismissed.

**Factual and Procedural Background**

Plaintiffs Robert Shoffner, Robert Thornton, Daniel Myers, and Steven Stauffer assert identical claims on behalf of themselves and all similarly situated present and future inmates of the Pennsylvania Department of Corrections (the "DOC").  (*See* Compl. ¶¶ 1, 24, Doc. No. 1.)

The dispute centers on a change in state law regarding parolees who are recommitted because of a parole violation.  Effective January 2, 2013, Pennsylvania law changed to allow the Pennsylvania Board of Probation and Parole (the "Board"), in its discretion, to credit a parolee "for the time spent at liberty on parole" to reduce the remaining amount of time the parolee would need to serve on the relevant sentence.  61 Pa. Cons. Stat. § 6138(a)(2.1).  This is known as getting credit for "street time."  (Compl. ¶ 2.)  The prior law did not provide the Board with this discretion.  Rather, it mandated that a recommitted parole violator would have to serve the full remainder of the sentence the parolee would have had to serve had parole not been granted.  (*Id.*)

Plaintiffs allege that they were in DOC custody and were released on parole.  (*See* Compl. ¶ 42.)  They subsequently violated their parole and were recommitted into the custody of the DOC.  (*Id.* ¶ 44.)  When the Board revoked their parole, it awarded them credit for their street time.  (*Id.* ¶ 45.)  The paperwork awarding them this credit was signed by Defendant Kimberly Barkley ("Barkley"), the Board Secretary.  (*Id.* ¶¶ 19, 46.)  Barkley, however, did not properly notify the DOC about the Plaintiffs' awards of street time credit.  (*Id.* ¶ 47.)

Once re-incarcerated, Plaintiffs filed grievances regarding the DOC's failure to reduce their remaining sentences by the amount of street time credit they had received from the Board.  (*Id.* ¶ 51.)  Defendant Michael Wenerowicz, the facility manager at State Correctional Institution – Graterford ("SCI – Graterford"), signed off on Plaintiffs' grievances.  (*Id.* ¶¶ 18, 52.)  These

2

grievances were later forwarded to Defendant Wendy Shaylor, the SCI – Graterford grievance coordinator.  (*Id.* ¶¶ 20, 54.)  Wenerowicz and Shaylor, however, "failed to take action or took insufficient actions to ensure Plaintiffs . . . received the time credit they were owed."  (*Id.* ¶ 55.)  As a result, Plaintiffs were held in custody beyond their maximum sentences.  (*Id.* ¶ 56.)  Plaintiffs were later released from custody.  (*Id.* ¶ 58.)

Plaintiffs allege that Defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures and their Eighth Amendment right to be free from cruel and unusual punishment by holding them in custody beyond their maximum sentences.[1]  They sue Defendants in both their individual and their official capacities pursuant to 42 U.S.C. § 1983.  (*Id.* ¶¶ 30, 31.)  With regard to Defendants in their individual capacities, Plaintiffs demand money damages.  (*Id.*)  With regard to Defendants in their official capacities, Plaintiffs demand declaratory and injunctive relief to "ensure that they are not on parole under supervision of the Board and to ensure defendants establish an adequate system to deal with" awards of street time credit.  (*Id.* ¶¶ 60, 71, 72.)

Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Mot. Dismiss, Doc. No. 5.)  Plaintiffs filed an opposition to the Defendants' motion.  (Opp'n Br., Doc. No. 7.)

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When confronted with a 12(b)(6) motion, a

---

[1]    Strictly speaking the Fourth and Eighth Amendments limit only the federal government and not the state governments.  Both the right to be free from unreasonable searches and seizures and the right to be free from cruel and unusual punishment, however, are applicable to the states through the Fourteenth Amendment's due process clause.  *Camara v. Mun. Court of City and Cnty. of S.F.*, 387 U.S. 523, 528 (1967) ("[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment."); *Furman v. Georgia*, 408 U.S. 238, 257 n.1 (1972) (Brennan, J., concurring) ("The Cruel and Unusual Punishments Clause is fully applicable to the States through the Due Process Clause of the Fourteenth Amendment.").

district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 210-11 (citation omitted).

When deciding a motion to dismiss, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) ("All allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.").

**Discussion**

Plaintiffs' Claims for Prospective Injunctive Relief

Before exploring the merits of Defendants' motion, the Court first dismisses Plaintiffs' claims for prospective injunctive relief pursuant to its "continuing duty to satisfy [itself] of [its] jurisdiction before proceeding to the merits of any case." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III

standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560-61.

To satisfy this test, a plaintiff must show that the alleged harm is "actual or imminent" rather than "conjectural or hypothetical." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014). Plaintiffs "must demonstrate that they face a realistic danger of sustaining a direct injury from the conduct of which they complain." *Id.* To satisfy standing to seek prospective injunctive relief against an alleged unconstitutional action by the state, plaintiffs must show that they are suffering or are sufficiently likely to suffer in the future a deprivation of rights due to the alleged unconstitutional practice. *See City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional."); *see also, e.g. O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Here, Plaintiffs allege their constitutional rights were violated when they were kept in custody beyond their maximum sentences due to the Defendants' failure to implement street time credit pursuant to 61 Pa. Cons. Stat. § 6138(a)(2.1). Plaintiffs seek prospective injunctive relief in the form of an order requiring Defendants to "implement any actions or policies necessary to ensure [the] cessation of such [civil rights] violations." (Compl. ¶¶ 71(c), 72(d)-(e); *see also*

Compl. ¶ 60 ("Plaintiffs also seek permanent declaratory and injunctive relief . . . to ensure defendants establish an adequate system to deal with . . . 61 Pa.C.S. § 6138(a)(2.1).").)

Yet Plaintiffs are not currently in state custody.  (*See* Compl. ¶ 58.)  Therefore, to be subjected to Defendants' alleged unconstitutional conduct, Plaintiffs would have to (i) be arrested, convicted, and sentenced for a crime, (ii) be granted parole, (iii) have that parole revoked, (iv) be given credit for their street time by the Board, and (v) be held beyond their maximum sentences due to the DOC's failure to properly implement the Board's street time credit.  This chain of speculation is insufficient to give Plaintiffs standing to secure prospective injunctive relief.  *See, e.g.*, *Lyons*, 461 U.S. at 105 ("That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.").

In short, Plaintiffs allege that their constitutional rights were violated in the past.  While this may give them standing to recover damages, it does not give them standing to seek prospective injunctive relief.  The Court therefore dismisses Plaintiffs' claims for prospective injunctive relief.  *See Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (holding that plaintiff did not have standing to sue for prospective relief where the complaint had "done nothing more than allege past exposure to unconstitutional state action."); *see also, e.g.*, *Cordial v. Atl. City*, No. 11-cv-01457, 2014 WL 1095584, at *8 (D.N.J. Mar. 19, 2014) (dismissing claims for injunctive relief where those claims were "based entirely on past harm" and Plaintiff failed to show "any likelihood of harm in the future.").

Plaintiffs' Class Action Allegations

The Court likewise dismisses Plaintiffs' class action allegations.  Curiously, Plaintiffs' putative class definition includes only *future* inmates who may be held beyond their maximum and *present* inmates who are currently being held beyond their maximum due to a failure to afford them the street time credit they were given under 61 Pa. Cons. Stat. § 6138(a)(2.1). (Compl. ¶ 24.)  The putative class does not include people, like Plaintiffs, who were held beyond their maximum sentences in the past.  (*See id.*)  Just as the Plaintiffs lack standing to bring a claim for harm they may or may not suffer in the future, they lack standing to bring such claims on behalf of the putative class.  *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("[A] plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class."); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009) ("If the named plaintiffs bringing a class action claims do not individually have standing to bring those claims, the case should be dismissed prior to the class certification process.").

Furthermore, present inmates who are being held beyond their maximums would not have a cognizable claim under 42 U.S.C. § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

7

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."). The Court accordingly dismisses Plaintiffs' putative class action claims.

Plaintiffs' Individual Fourth Amendment Claim (Count I)

Defendants move to dismiss Plaintiffs' Fourth Amendment claim, arguing that "the United States Supreme Court has held that the Fourth Amendment has no applicability to prison cells." (Mot. Dismiss 9 (quoting *Granberry v. Chairman of Pa. Bd. of Prob. & Parole*, No. 07-0272, 2010 WL 486593, at *4 (W.D. Pa. Feb. 5, 2010).) Plaintiffs never address this argument in their opposition brief. Indeed, Plaintiffs' opposition only asserts that the complaint "establishes all of the elements of an Eighth Amendment claim against each of the Defendants." (Opp'n Br. 5.) The Court therefore considers Plaintiffs' Fourth Amendment claim abandoned and dismisses it with prejudice.[2] *See, e.g.*, *Markert v. PNC Fin. Serv. Grp.*, 828 F. Supp. 2d 765, 772 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue."); *Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 165 (E.D. Pa. 1983) ("It appears that the plaintiffs have dropped their negligent design claim because they did not contest or oppose defendant's motion to dismiss that claim.").

Plaintiffs' Individual Eighth Amendment Claim (Count II)

Defendants move to dismiss Plaintiffs' Eighth Amendment claim based on a failure to state a claim upon which relief can be granted. Defendants advance two theories in support of their motion. First, Defendants assert that the complaint does not contain sufficient factual material to state a claim under § 1983 generally. Defendants believe that allegations of "some

---

[2]    Moreover, Defendants' argument appears to be correct on the merits. *See Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) (concluding "that post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment.").

particularity" are "critical" in § 1983 cases "because defendants in a civil rights action must have personal involvement to be liable." (Mot. Dismiss 7 (quotation omitted).)  They contend that Plaintiffs' allegations do not meet this standard because "no dates or even general timeframes are alleged and [n]o documents are attached to the Complaint." (*Id*.)

Defendants would have the Court hold Plaintiffs' to a heightened pleading standard to which they are not subject.  Civil rights plaintiffs do not have to plead their claims with particularity. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004) ("[A] heightened pleading requirement for civil rights complaints no longer retains vitality under the Federal Rules."); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).  All that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible," detailed factual allegations are unnecessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).  Here Plaintiffs do more than simply allege these elements; they allege "facts to raise a reasonable expectation that discovery will reveal evidence of" these elements. *Twombly*, 550 U.S. at 556.  Specifically, Plaintiffs allege that they were awarded street time credit when they were re-incarcerated after a term of parole. (Compl. ¶¶ 42-45.)  Their sentences were not reduced to account for this street time credit. (*Id.* ¶ 49.)  As a result, they were held in custody beyond their maximum sentences in violation of the constitutional ban on cruel and unusual punishment. (Compl. ¶ 56.)  This claim

is simple and straightforward.  Plaintiffs need not plead dates or attach documents to survive a motion to dismiss in this context.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010) ("[C]ontext matters in notice pleading, and what suffices to withstand a motion to dismiss necessarily depends on substantive law and the elements of the specific claim asserted.") (citation and quotation omitted); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05  (7th Cir. 2010) ("[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet [the pleading] burden than it was before [*Twombly* and *Iqbal*]. . . .  A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.")

Moreover, the allegations in the complaint sufficiently show that each Defendant was personally involved and was acting under color of state law.  Barkley, the Board Secretary, failed to "properly notify the DOC about her award of time credit to the Plaintiffs."  (Compl. ¶¶ 19, 47.)  Wenerowicz, the facility manager at SCI – Graterford, and Shaylor, the grievance coordinator at SCI – Graterford, both "received grievances from Plaintiffs . . . advising them of the time credit errors" yet "failed to take action or took insufficient actions to ensure Plaintiffs . . . received the time credit they were owed."  (Compl. ¶¶ 54, 55.)  Taken as true, these allegations are sufficient to show each Defendant was acting under the color of state law and had personal involvement in the alleged deprivation.  Defendants' first theory fails.

Defendants next argue that the allegations in the complaint fail to state a claim that Plaintiffs' Eighth Amendment rights were violated.  Defendants agree that "[d]etention for a significant period beyond the term of one's sentence may amount to a violation of the Eighth Amendment's ban on cruel and unusual punishment."  (Mot. Dismiss 8.)  Nevertheless, they argue, to state an Eighth Amendment claim, a plaintiff must establish, among other things, that

the official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted, and despite this knowledge, failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference.  (*Id.*)  They go on to argue that there is no allegation in the complaint that Barkley was actually aware of the problem or the risk of unwarranted punishment.  They further argue that there are no specifics alleged as to what actions Shaylor and Wenerowicz failed to take or took ineffectually.  (*Id.* at 10.)

Both arguments ignore the factual allegations in the complaint and the reasonable inferences that can be drawn therefrom.  With respect to Barkley, the complaint alleges that she "did not properly notify the DOC about her award of time credit to the Plaintiffs."  (Compl. ¶ 47.)  It is reasonable to infer that Barkley would have known that there would be a substantial risk that Plaintiffs would be held beyond their maximums if she did not properly submit their time credits to the DOC.  *See Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997) ("A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence.").  With respect to Shaylor and Wenerowicz, the complaint alleges that Plaintiffs advised them through the prison grievance procedure that their sentences were erroneously calculated, yet Shaylor and Wenerowicz failed to act or took ineffectual actions on those grievances, resulting in Plaintiffs remaining in custody beyond their maximum sentences. (Compl. ¶¶ 54-56.)  The reasonable inference, therefore, is that Shaylor and Wenerowicz failed to release Plaintiffs from custody and/or recalculate their sentences upon notification that Plaintiffs' sentences were erroneously calculated.  Consequently, Plaintiffs' allegations are sufficient to state a claim that they were subjected to cruel and unusual punishment.  Defendants' second theory fails.

11

The complaint, however, is deficient in another respect.  Plaintiffs fail to allege facts to show that their sentences were "favorably terminated," as that phrase applies to § 1983 plaintiffs challenging the constitutionality of a prison sentence.  "[T]o recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  This requirement is known as the "favorable termination rule."  *See, e.g.*, *Torres v. Fauver*, 292 F.3d 141, 147 (3d Cir. 2002).  If a § 1983 plaintiff does not allege facts to show that a purportedly unconstitutional sentence was "favorably terminated," (*i.e.* reversed, expunged, invalidated, or called into question through a writ of habeas corpus), the complaint fails to state a claim upon which relief can be granted.  *See, e.g.*, *Nguyen Vu v. City of Phila.*, 10-cv-0953, 2012 WL 1222628, at *5 (E.D. Pa. Apr. 11, 2012) ("[A]n essential element of a civil rights claim of this type is that the underlying criminal case must have been terminated in favor of the civil rights claimant.").

Here, Plaintiffs allege that Shaylor and Wenerowicz failed to take action to remedy Plaintiffs' complaints that they were not properly given their street time credit to reduce the time remaining on their sentences.  (Compl. ¶ 55.)  This "deficient response[]" resulted in Plaintiffs "being held past their maximum dates."  (*Id.* ¶ 57.)  "Plaintiffs were subsequently released from custody."  (*Id.* ¶ 58.)  These allegations lead to the natural inference that the DOC released Plaintiffs from custody after their sentences expired *as originally calculated*.  It is unreasonable to read the complaint as a whole and infer that the DOC released Plaintiffs after acknowledging that they were not properly credited with their street time, which would reflect a favorable

termination.  Therefore, the complaint fails to allege facts to show that Plaintiffs received a favorable termination of their sentences, and an award of damages would directly "impugn[] the validity of" their sentences.  *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005).  The complaint therefore fails to state a claim upon which relief can be granted.[3]  *See, e.g.*, *Deemer v. Beard*, 557 F. App'x 162, 164 (3d Cir. 2014) (affirming district court's dismissal of § 1983 claim where plaintiff "had made previous attempts to overturn the Board's decision [but] none had yielded a favorable disposition.").

The Court acknowledges that the favorable termination issue was not raised by Defendants and recognizes that this is a civil rights case.  It therefore grants Plaintiffs leave to amend their complaint.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[W]e have continued to apply the amendment rule in civil rights cases, citing [*Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976)] for the proposition that leave to amend must be granted *sua sponte* before dismissing these complaints."); *M.U. v. Downingtown High Sch. E.*, --- F. Supp. 3d ---, No. 14-cv-04877, 2015 WL 1893264, at *12 (E.D. Pa. Apr. 27, 2015) ("In civil rights cases such as this one, leave to amend must be granted *sua sponte* before dismissing the complaint.").

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3]     The majority of U.S. Courts of Appeal have ruled that the favorable termination rule applies only to § 1983 plaintiffs who are currently in state custody and therefore can challenge the fact or duration of their sentences through a petition for habeas corpus.  *See Deemer v. Beard*, 557 F. App'x 162, 165-66 (3d Cir. 2014) (collecting cases).  The Third Circuit, however, has "not adopted this approach" and has "interpreted *Heck* to impose a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence."  *Id.* at 166; *see also Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) ("[A] § 1983 remedy is not available to a litigant to whom habeas relief is no longer available."); *Gilles v. Davis*, 427 F.3d 197, 210 (3d Cir. 2005).  This Court is bound by that interpretation.